IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY G. HARRIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KIMBERLY BUTLER, R. HARRINGTON, ) <br> SANDRA FUNK, LOYD HANNA, JIM ) <br> WINTERS, WARDEN FLAGG, SUSANNE ) <br> GRISWALD-BAILEY, DR. SHEARING, M. ) <br> ATCHISON, and BRAD J. ROBERT, ) <br> ) <br> Defendants. ) | Case No. 3:14-cv-498-RJD |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Larry G. Harris, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights. Plaintiff alleges he was transferred from a medium security facility to a maximum security facility in retaliation for requesting his medically-prescribed, non-soy diet and engaging in First Amendment activity. Plaintiff also alleges his requests for a non-soy diet were refused, and he was denied a low bunk permit and medications that had been prescribed to treat a rash on his face. The only claims that remain pending[1] are against Defendant Dr. Shearing for retaliation, conspiracy, and deliberate indifference for denying Plaintiff his prescribed non-soy diet[2].

---

[1] Plaintiff settled his claims against the IDOC Defendants (*See* Doc. 241).
[2] In reviewing the parties' briefing, it appears there is some confusion as to what claims Plaintiff was allowed to proceed on against Dr. Shearing following the Court's threshold review. For clarification, the Court only allowed Plaintiff to proceed on his deliberate indifference claim against Dr. Shearing for failing to prescribe him a non-soy diet. The Court did not allow Plaintiff to proceed on any claims related to his rash or the failure to issue a low bunk permit.

Defendant Robert Shearing, M.D. filed a Motion for Summary Judgment on October 27, 2017 (Doc. 239). Plaintiff filed his response on December 5, 2017 (Docs. 247-248). For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Harris' claims against Dr. Shearing concern his alleged failure to prescribe him a non-soy diet while he was incarcerated at Menard Correctional Center ("Menard"). Harris asserts that he suffers from Hashimoto's Thyroditis[3] (*see* Deposition of Larry Harris, Doc. 240-4, p. 6). His condition causes him to suffer from hypothyroidism, which causes him chronic constipation, severe bowel bleeding, hemorrhoids, low heart rate, and night sweats (*Id.*). Harris' medical records indicate he was prescribed Synthroid to manage his hypothyroidism (Affidavit of Robert Shearing, M.D., Doc. 240-2, ¶¶ 9, 12-14; *see* Plaintiff's Medical Records, Doc. 240-1, pp. 6, 8, 13, 16). It is undisputed that Harris does not suffer from a soy allergy; however, he asserts that eating soy aggravates his thyroid gland, which exacerbates his disease (*Id.* at 30). For this reason, Harris has often sought a soy diet while incarcerated at IDOC facilities (*Id.* at 8). Harris testified that he received a soy diet while incarcerated at Pinckneyville and Lawrence Correctional Centers, but Dr. Shearing denied his requests for a soy diet while he was at Menard from January 28, 2013 to February 6, 2013, and again from June 7, 2013 to July 25, 2013, when the Assistant Warden of Programs directed that he be provided a soy-free diet as an "administrative move" (Doc. 240-4 at 32, 34; Doc. 240-2 ¶ 24; *see* Doc. 240-1 at 22 and Doc. 248-1 at 3).

In particular, Harris testified that while on a writ at Menard from January 28, 2013 to February 6, 2013, he saw Dr. Shearing on one occasion (Doc. 240-4 at 32). Harris told Dr.

---

[3] Hashimoto's disease is a condition in which the immune system attacks the thyroid. It is the most common cause of hypothyroidism in the United States. *Hashimoto's disease*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/hashimotos-disease/symptoms-causes/syc-20351855.

Shearing that he needed a non-soy diet and asked him to look at his medical records and internet research regarding his condition and its relation to soy (*Id.* at 32, 34). Dr. Shearing refused to look at the internet research and told Harris that they did not offer non-soy diets at Menard, but he would treat him when he became sick from the soy (*Id.* at 32). As a result, Harris had to refuse his food trays during this brief stay (Doc. 248-3 at 2-3).

Harris asserts that after he returned to Menard on June 7, 2013, Dr. Shearing refused to see him (*Id.* at 32). Sometime after his transfer, Harris explains he ate some soy to demonstrate he would get sick and was seen by medical staff (Doc. 248-3 at 3). According to Harris' medical records, he saw a nurse on July 10, 2013, to request a non-soy diet (Doc. 240-2 at ¶ 20; *see* Doc. 240-1 at 19). Harris self-reported that he had allergic reactions requiring hospitalization with the ingestion of soy products (*Id.*). The nurse then referred Harris to the MD call line to discuss his request for a non-soy diet (*Id.*). Harris attests that he was placed on Dr. Shearing's call line, but Dr. Shearing refused to see him and refused to review his medical records[4] (Doc. 248-3 at 3). Dr. Shearing attests that he performed a jacket review of Harris' chart on July 18, 2013 (Doc. 240-2 at ¶ 21; *see* Doc. 240-1 at 20). Dr. Shearing noted that Harris requested a soy-free diet and, after reviewing his medical chart, determined that there was no objective evidence to support Harris' statements that he was allergic to soy or that he had been hospitalized due to the ingestion of soy products (*Id.*). Therefore, Dr. Shearing denied Harris' request for a non-soy diet (*Id.*).

Harris saw Dr. Nwaobasi on July 18, 2013 and again requested a non-soy diet (Doc. 240-2 at ¶ 5; *see* Doc. 240-1 at 21). Dr. Nwaobasi noted there was no clinical lab data to confirm Harris' alleged soy allergy, and referred Harris to be seen by the Medical Director (Dr. Shearing) (*Id.*). Harris attests that he never saw Dr. Shearing while at Menard from June 7, 2013 to May 14, 2014

---

[4] It is unclear how Harris has personal knowledge to support these statements.

(Doc. 248-3 at 3); however, Dr. Shearing attests, in corroboration with Harris' medical records, that he saw Harris on July 18, 2013, shortly after his exam with Dr. Nwaobasi (Doc. 240-2 at ¶ 23; *see* Doc. 240-1 at 21). Dr. Shearing states that he reviewed the medical records with Harris and explained to him that he tested negative for a soy allergy and, therefore, he denied his request for a soy-free diet (*Id.*).

Harris attests that in June and July 2013 he drafted numerous letters to Dr. Shearing requesting a non-soy diet, but he never received a response (Doc. 240-4 at 34; Doc. 248-3 at 3). Although Harris never received a response to his letters, he testified that a medical technician came to his cell in August 2013 and told him to "stop putting in for sick call, Dr. Shearing ain't [*sic*] going to treat you, stop writing him" (Doc. 240-4 at 35).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

In assessing a summary judgment motion, the district court views the facts in the light most

favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). The Seventh Circuit has remarked that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

### *Count One - Retaliation*

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a motiving factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff

has established the "but-for" causation needed to succeed on his claim. *Id.*

In order to make his prima facie case at this stage, Harris' evidence must be sufficient to show that his complaints and litigation concerning the soy-diet issue was a motivating factor in Dr. Shearing's decision to deny his previous orders for a soy-diet, rosacea treatment, and low bunk permit. Harris may meet his burden by presenting either direct or circumstantial evidence. *Kidwell*, 679 F.3d at 965. Direct evidence is evidence which will prove a particular fact without reliance upon inference or presumption, while circumstantial evidence is evidence from which a trier of fact may infer that retaliation occurred, including suspicious timing or ambiguous oral or written statements. *Id.* (quotations and citations omitted).

Plaintiff provides no direct evidence of any retaliatory motive. At most, it appears Harris is relying on the general timing of the events to establish his prima facie case. The Seventh Circuit has held that a plaintiff's reliance on suspicious timing to establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted). Further, the adverse action must follow "close on the heels" of the protected expression and the plaintiff must show that the person who took the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 966. Here, the Court is not convinced that the alleged retaliatory action followed "close on the heels" of any protected expression and, more importantly, there is simply a lack of evidence that Dr. Shearing was even aware of the same. Accordingly, Dr. Shearing is entitled to summary judgment as to Count One.

*Count Two - Conspiracy*

While civil conspiracy claims are cognizable under § 1983, *see Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983), conspiracy is not

an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

In order to proceed on his conspiracy claim, Plaintiff must demonstrate: (1) that Dr. Shearing had an express or implied agreement with the other defendants to deprive him of his constitutional rights, and (2) that he was deprived of his constitutional rights by Defendants' overt actions in furtherance of the agreement. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir. 1998)). Significantly, "[b]ecause conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511 (citing *Williams v. Seriff*, 342 F.3d 774, 785 (7th Cir. 2003). Moreover, the Seventh Circuit has directed that although "a conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary, and include no overt acts reasonably related to the promotion of the alleged conspiracy," *Amudsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (internal quotation marks omitted), "[s]ummary judgment should not be granted if there is evidence from which a reasonable jury could infer the existence of a conspiracy," *Beaman*, 776 F.3d at 510-11.

Harris fails to argue, with any specificity, what evidence demonstrates that Dr. Shearing acted in concert with any other defendant to deprive him of a constitutional right. Indeed, he merely rests on the circumstantial evidence "demonstrated throughout [his] memorandum." As there is no evidence of any agreement or overt action taken in furtherance of any agreement, Dr. Shearing is entitled to summary judgment as to Count Two.

*Count Three - Deliberate Indifference*

Dr. Shearing argues summary judgment in his favor is warranted as Harris has not shown that he had a serious medical need necessitating a soy-free diet and, therefore, there is no basis to find he acted with deliberate indifference in refusing to prescribe the same[5].

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so

---

[5] Dr. Shearing also contends that the settlement agreement entered in *Harris, et al. v. Brown, et al.,* No. 07-cv-03225-HAB, in the United States District Court, Central District of Illinois, precludes Harris from pursing his soy-diet claim. After reviewing the relevant provisions of the settlement agreement, the Court is not convinced that it was intended to cover the claims in this lawsuit. As Harris points out, this suit was pending at the time the parties entered into the settlement agreement, yet the release did not require Harris to dismiss this action; rather, it specifically limited any release to the Central District case (*see* Doc. 240-8, pp. 2, 4). Accordingly, the Court does not find that Harris' deliberate indifference claim against Dr. Shearing is precluded by the relevant settlement agreement.

obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

With regard to the objective requirement, the Court finds that the medical condition at issue is Hashimoto's disease, which is a serious medical need insofar as it requires regular, and possibly lifelong, treatment (Doc. 240-3 at 6-7). Indeed, Plaintiff testified that his condition causes him to suffer from chronic constipation, severe bowel bleeding, hemorrhoids, low heart rate, and night sweats. The Court's analysis, however, does not end here. The Court must also consider whether Dr. Shearing acted with deliberate indifference to Harris' medical condition by denying his request for a non-soy diet. Even when viewing the evidence in Harris' favor, it is clear that Dr. Shearing did not act with deliberate indifference.

There is no evidence in the record before the Court to establish that the consumption of soy exacerbated or contributed to Harris' Hashimoto's disease. Any such correlation is based on pure speculation. Harris' reliance on various studies cited in *Harris v. Brown*, 07-cv-3225, 2014 WL 4948229 (C.D. Ill., Sept. 30, 2014), is misplaced as the studies were not submitted in this case, did not discuss Hashimoto's disease in particular, have not been disclosed to Defendant, and were not relied on by the *Harris* court in any of its conclusions. Indeed, the court merely indicated that "even accepting these studies and the opinions of the plaintiffs' experts, the most that can be said is that the safety of soy is a topic of current debate and study and has been for some time." *Id.* at *3-4. In this case, the only evidence concerning the effect of soy on Harris' Hashimoto's disease and hypothyroidism is Dr. Shearing's testimony that there is no correlation (Doc. 240-3 at 7). Because there is no evidence to demonstrate that Harris' consumption of soy exacerbated or contributed to the symptoms of his Hashimoto's disease, Dr. Shearing did not act with deliberate indifference to any substantial risk of harm in declining to provide Harris a non-soy diet. That Harris was prescribed non-soy diets by other medical providers is neither relevant nor dispositive. For these reasons, Dr. Shearing is entitled to judgment as a matter of law on Harris' claim of deliberate indifference.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Dr. Shearing (Doc. 239) is **GRANTED**. Dr. Shearing is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED: February 14, 2018**

/s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**